## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWAYNE WRIGHT, | : | Civil No. 1:24-CV-00016 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN RIVELLO, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Dwayne Wright ("Petitioner").  (Doc. 1.)  Also pending is Petitioner's motion for an extension of time pending appeal.  (Doc. 35.)  For the reasons set forth below, the court will deny the petition for habeas corpus and deny the pending motion for an extension of time as moot.

### BACKGROUND AND PROCEDURAL HISTORY

On May 8, 2019, Petitioner was found guilty after a bench trial of two counts of firearms not to be carried without a license, receiving stolen property, two counts of person not to possess firearms, possession with intent to deliver marijuana and possession with intent to deliver cocaine, possession of drug paraphernalia, driving an unregistered vehicle, and driving under suspension in the Court of Common Pleas of Lancaster County.  (Doc. 17-1, p. 13.)[1]

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

The trial court summarized the facts and procedural history of Petitioner's

Post Conviction Relief Act ("PCRA") case, as follows:

> On June 12, 2018, Officers Jacob Bingham and Timothy Sinnot[] of the Lancaster City Bureau of Police ("LCBP") were on patrol when they stopped a vehicle with an expired registration. The vehicle, a 2001 Ford Focus, was registered to Bruce Dates, who Officer Bigham [*sic*] later learned lived in Alabama. Officer Bingham approached the vehicle and spoke with the driver, Petitioner Dwayne Wright, who provided Officer Bingham with photo identification. Officer Bingham ran Petitioner's identification and discovered that Petitioner's license was suspended. During the vehicle stop, Dispatch also informed Officer Bingham that Petitioner had an outstanding warrant for a state parole violation. At that point, Officer Bingham and Officer Sinnot removed Petitioner from his vehicle, placed him under arrest, and searched Petitioner's person.
>
> After Petitioner was secured in the police cruiser, Officer Bingham conducted an inventory search of the Ford Focus and located a black jacket on the front passenger's seat. In the pocket of the black jacket, Officer Bingham found a clear plastic corner tie baggie containing cocaine. After finding the cocaine, Officers Bingham and Sinnot decided to obtain a warrant before searching the rest of the vehicle. Officer Bingham drove the vehicle to the police station and the Officers obtained a search warrant for controlled substances.
>
> When Officers Bingham and Sinnot executed the search warrant, they found a bag in the trunk containing powder cocaine, crack cocaine, and a firearm. The Officers then applied for a second search warrant for firearms, weapons, and ammunition. When executing the second search warrant, the officers seized approximately 50 grams of cocaine, marijuana and related paraphernalia, two pistols, ammunition for both pistols, and cash totaling approximately $1,579.
>
> Petitioner was subsequently charged with two counts of firearms not to be carried without a license, two counts of possession with intent to deliver controlled substances, one count of person not to possess firearms, receiving stolen property, possession of drug paraphernalia, and driving while operating privileges are suspended or revoked.

On September 5, 2018, Petitioner, through his attorney, Edwin Pfursich, Esq., filed a Motion to Suppress the physical evidence seized from the vehicle.  In his Motion, Petitioner argued that Officer Bingham's initial inventory search was conducted in violation of Pennsylvania Constitution Article I, Sections 8 and 9, as well as the United States Constitution Amendments 4, 5, and 6, and that all evidence discovered during that search and the subsequent searches should be suppressed. [The trial court] held a hearing on Petitioner's Motion on November 15, 2018, during which the facts set forth above were established. Following the hearing, both Petitioner and the Commonwealth submitted supporting briefs.  After considering the factual record established during the hearing and the arguments of counsel, [the court] determined that although Officer Bingham's inventory search was improper under 75 Pa.C.S.[ ] § 6309.2—which governs the proper procedures for immobilization, towing, storage, and impoundment of vehicles driven without a license or proper registration—the inventory search and all subsequent searches were nonetheless valid pursuant to the inevitable discovery doctrine.  Consequently, on February 27, 2019, [the court] denied Petitioner's Motion to Suppress.

Petitioner was thereafter found guilty on all counts at a stipulated bench trial.   [The court] ordered a pre-sentence investigation and, after receiving the report, sentenced Petitioner to seven and a half to twenty years imprisonment.  Petitioner subsequently filed a Notice of Appeal challenging, among other things, [the] denial of his Motion to Suppress. On October 26, 2020, the Superior Court affirmed [the trial court's] decision to deny Petitioner's Motion to Suppress and on May 12, 2021, the Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal.

On July 17, 2021, Petitioner filed the instant *pro se* PCRA Petition.  On August 10, 2021, [the court] appointed Christopher P. Lyden, Esq. to represent Petitioner and granted Attorney Lyden 60 days to file an amended petition.  On September 23, 2021, Attorney Lyden filed a Motion to Extend Time to File Amended Petition.  On September 27, 2021, [the PCRA court] granted Attorney Lyden 60 additional days to file an amended petition.

On December 7, 2021, Petitioner, through Attorney Lyden, filed the instant[,] Amended PCRA Petition (hereinafter "Amended Petition") in

which Petitioner argued that Attorney Pfursich was ineffective for
failing to call a key witness— Petitioner's mother, Jacklyn Draughn—
during the November 15, 2018, suppression hearing. Petitioner
contended that had Officers Bingham and Sinnot simply immobilized
the vehicle without executing an unconstitutional, warrantless search,
Ms. Draughn and Mr. Dates—the owner of the Ford Focus—were
available to take the steps necessary to take possession of the vehicle
before it was towed such that the vehicle would not have needed to be
searched, negating the applicability of the inevitable discovery doctrine.
In support of his argument, Petitioner averred that although Ms.
Draughn was present at the time of his arrest and approached Officers
Bingham and Sinnot, the Officers refused to turn the Ford Focus over to
her and instead drove the vehicle from the scene.  Petitioner also asserted
that Ms. Draughn later went to the police station and was again denied
access to the Ford Focus.  Notably, although Petitioner requested an
evidentiary hearing, he failed to include as part of his Amended Petition
the witness certification required by 42 Pa.C.S.[ ] § 9545(d)(1).

On December 8, 2021, [the court] issued an Order directing the
Commonwealth to file a response to the Amended Petition and the
Commonwealth filed a response on December 28, 2021.  On February
1, 2022, [the court] issued a Notice of Intent to Dismiss the Amended
Petition without a hearing, explaining that Petitioner had failed to
comply with 42 Pa.C.S.A. § 9545(d)(1), that Petitioner had previously
litigated the claims set forth in his Amended Petition on direct appeal,
that there were no genuine issues concerning any material fact, and that
no purpose would be served by further proceedings.  [The PCRA court]
granted Petitioner until February 21, 2022, to respond to the Notice.

In Petitioner's February 9, 2022, Response, he included a witness
certification (hereinafter "Certification") for Ms. Draughn, signed by
Attorney Lyden, setting forth Ms. Draughn's personal information and
the content of her proposed testimony.  According to the Certification,
Ms. Draughn would have testified to the following at a PCRA hearing:

> She was present during the arrest of [Petitioner] and during
> the subsequent search of the vehicle.  She resided in
> Lancaster City at the time of this incident.  She asked to
> have the vehicle turned over to her, but the officers
> refused.  She saw an officer drive the vehicle off from the

scene of the arrest. She went to the police station and asked to have the vehicle turned over to her, but again was denied. The police delivered the keys of the vehicle to Ms. Draughn's residence the following Sunday. Mr. Bruce Dates, the owner of the vehicle, is her brother. She had the ability to communicate with Mr. Dates and, with his cooperation, do what was necessary to clear the registration and receive possession of the vehicle.

Petitioner Response to Pa.R.Crim.P. 907 Notice, Certification, Feb. 9, 2022.

After reviewing Petitioner response—including the attached Certification—in light of relevant case and statutory law, [the court] again found that no purpose would be served by holding a hearing and that Petitioner's claim had been previously litigated. Consequently, [the PCRA court] issued an Order dismissing Petitioner's Amended Petition on March 21, 2022.

On March 22, 2022, Petitioner filed a counseled Notice of Appeal to the Superior Court from [the] March 21st Order. Petitioner filed his [Pa.R.A.P. 1925(b)] Concise Statement of Errors [Complained of on Appeal] on March 29, 2022, to which the Commonwealth responded on April 11, 2022.

(Doc. 17-2, pp. 38–43.) The PCRA court filed this Rule 1925(a) opinion on June 21, 2022. (*Id.*, p. 81.)

Petitioner then challenged one issue to the Superior Court of Pennsylvania: "Did the PCRA court err by concluding that Appellant's claim raised in his PCRA petition was meritless and previously litigated?" (*Id.*, p. 112.) On November 17, 2022, the Superior Court affirmed the application of the inevitable discovery doctrine and found that any claims of ineffective assistance of counsel premised on Attorney Pfursich's decision to not call Ms. Draughn as a witness would fail as the

5

claim lacked merit. *Commonwealth v. Wright*, 289 A.3d 79, 2022 WL 17039304,

(Pa. Sup. Ct. Nov. 17, 2022) (finding that because Ms. Draughn did not appear

before the appropriate judicial authority with the necessary paperwork within 24

hours of the vehicle's immobilization, at which time, the police could tow the

vehicle, and conduct an inventory search, the inevitable discovery doctrine applies

regardless of any statement Ms. Draughn could have provided). Petitioner filed a

petition for allowance of appeal from the order of the Superior Court, which was

denied on April 26, 2023. *Commonwealth v. Wright*, No. 532 MAL 2022 (Pa. Apr.

26, 2023).

Petitioner initiated this action by filing a petition for writ of habeas corpus,

which was received and docketed by the court on January 5, 2024. (Doc. 1.) A

response was filed on March 21, 2024, and a traverse was filed on October 1, 2024.

(Docs. 17, 31.)

On February 25, 2025, Petitioner filed a motion for an enlargement of time

pending appeal. (Doc. 35.)

## VENUE

Under 28 U.S.C. § 2241(d), a petition for a writ of habeas corpus under

Section 2254 can be filed in either the district where the petitioner is in custody, or

in the district where the petitioner was convicted and sentenced. 28 U.S.C. §

2241(d). Petitioner is in custody at State Correctional Institution Huntingdon

("SCI-Huntingdon") in Cumberland County, which is located in this district. *See* 28 U.S.C. § 118(b). Therefore, venue in this district is proper.

**STANDARD OF REVIEW**

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)). The exercise of restraint by a federal court in reviewing and granting habeas relief in state court criminal prosecutions is appropriate due to considerations of comity and federalism. *See Engle v. Isaac*, 456 U.S. 107 (1982). "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Id.* There is also a recognized interest in the finality of convictions that have survived direct review within the state court system. *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). If a claim

presented in a § 2254 petition has been adjudicated on the merits in state court

proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

## DISCUSSION

Petitioner raises two overarching claims: (1) evidence admitted at trial

should be excluded under the Fourth Amendment; and (2) ineffective assistance of

counsel.  (Doc. 1.)

### A. Relief Based on the Fourth Amendment Claim Will Be Denied.

Petitioner divides the Fourth Amendment claim into three discrete issues: (1)

that the police lacked probably cause for the initial search; (2) that the fruit of the

illegal search must be excluded; and (3) the requirements of the inevitable

discovery doctrine were not met.  (*Id*.)

The Supreme Court has held that "where the State has provided an

opportunity for full and fair litigation of a Fourth Amendment claim, a state

prisoner may not be granted federal habeas corpus relief on the ground that

evidence obtained in an unconstitutional search or seizure was introduced at his

trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976); *see also, Wright v. West*, 505

U.S. 277, 293 (1992); *Marshall v. Hendricks*, 307 F.3d 36 (3d Cir. 2002); *Deputy v. Taylor*, 19 F.3d 1485 (3d Cir. 1994).

Petitioner argues in his traverse that he did not receive a full and fair opportunity to litigate the Fourth Amendment claims in state court. (Doc. 31, p. 3.) Specifically, he challenges the application of the inevitable discovery doctrine. (*Id.*) However, a review of the record demonstrates that Petitioner was provided an opportunity for full and fair litigation of these Fourth Amendment claims. The constitutionality of the search and seizure was initially considered during a pretrial suppression hearing. (Doc. 17-1, pp. 4–7.) Later, in various appellate and post-conviction proceedings these issues were again addressed. *See Commonwealth v. Wright*, No. 1468 MDA 2019, 2020 WL 6268281 (Pa. Sup. Ct. Oct. 26, 2020); (Doc. 17-2, pp. 38–50). As such, Petitioner may not be granted federal habeas corpus relief on this basis.

**B. Relief Based on Ineffective Assistance Counsel Will Be Denied.**

Petitioner also seeks relief premised on ineffective assistance of counsel, arguing that trial counsel failed to interview and subpoena witness Jackie Draughn as a witness, and trial counsel failed to object to the admissibility of the evidence seized in the initial inventory search. (Doc. 1, pp. 5–6; Doc. 2, pp. 3–4.) Petitioner alleges that appellate counsel failed to provide an adequate record for review on

appeal.  (Doc. 2, pp. 6–7.)  Additionally, Petitioner argues that he was prejudiced by the cumulative errors.  (*Id*., pp. 4, 7.)

### 1.  Interview/Subpoena Witness

Initially, the court will review Petitioner's claims of ineffective assistance of counsel premised on a failure to interview and subpoena the witness Jackie Draughn, as Petitioner clearly raised this issue before the PCRA court and the Superior Court and each court addressed this issue in their decisions.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. amend VI.  The purpose of the right to the assistance of counsel is to ensure a fair trial, and "the Court has recognized that 'the right to counsel is the right to the effective assistance of counsel.'"  *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.*  "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."  *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).  The clearly established federal law as to an ineffective-assistance-of-counsel claim is *Strickland*, which sets forth the following two-prong analysis.

Under the first prong of *Strickland*, the petitioner must establish that counsel's performance was deficient. 466 U.S. at 687. "*Strickland's* first prong sets a high bar." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017). To establish that counsel's performance was deficient, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. As such, the court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance," *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689), and "[t]o overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances[.]'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 688). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

Under the second prong of *Strickland*, the petitioner must establish prejudice. *Strickland*, 466 U.S. at 687. To do so, the petitioner must show a reasonable probability that, if not for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. The petitioner "need not prove that the

11

evidence would have been insufficient if not for counsel's errors . . . [or] 'that counsel's deficient conduct more likely than not altered the outcome.'" *Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 588 (3d Cir. 2015) (quoting *Strickland*, 466 U.S. at 693). Rather, the issue is whether there is a reasonable probability of a different result. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Harrington*, 562 U.S. at 112).

To prevail on an ineffective-assistance claim, a petitioner must satisfy both prongs of *Strickland*. A court can choose which prong of the standard to apply first, and it may reject an ineffectiveness claim on the ground that the petitioner was not prejudiced without addressing whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Premo v. Moore*, 562 U.S. 115, 122 (2011). And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105. When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's

12

determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

Here, the court finds that Petitioner's argument fails under the first prong of the *Strickland* standard. The Superior Court adopted that PCRA Court's opinion concluding that calling Ms. Draughn as a witness would not have changed the analysis under the inevitable discovery doctrine. *Wright*, 2022 WL 17039304. The Superior Court concluded that trial counsel cannot be deemed ineffective for failing to take a meritless course of action. *Id.* The Third Circuit has concluded that counsel will not be deemed ineffective for failing to raise a meritless argument. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) (citations omitted). As such, the Petitioner has not established that the State court's treatment of the ineffective assistance of counsel claim was contrary to or unreasonable under federal law.

13

## 2. Remaining Ineffective Assistance of Counsel Claims

Of the ineffective assistance of counsel claims Petitioner has raised, only the one discussed above was fully presented to the state court. The remaining claims are procedurally defaulted.

A federal court may not grant a writ of habeas corpus on a claim brought by an individual in custody pursuant to a state court judgment unless: (1) "the applicant has exhausted the remedies available in the courts of the State;" (2) "there is an absence of available State corrective process;" or (3) "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A), (b)(1)(B); *see also Wilkerson v. Sup't Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017). Section 2254(c) provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Thus, when a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts will typically refuse to entertain a petition for writ of habeas corpus. *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002). It is the petitioner who bears the burden of establishing the exhaustion requirement has been satisfied. *See Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000).

"[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To satisfy the exhaustion requirement, a petitioner must invoke "one complete round" of the applicable state's appellate review process, thereby giving the courts of that state "one full opportunity" to resolve any issues relevant to such claims. *Id*. at 845 (holding that a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest court before exhaustion is considered satisfied).  To "fairly present" a claim, the petitioner must present his or her "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

The failure to properly present claims to the state court generally results in a procedural default.  *Lines*, 208 F.3d at 150–60.  "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'"  28 U.S.C. § 2254(b).  In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims "unless the applicant establishes 'cause and prejudice' or a

'fundamental miscarriage of justice' to excuse his or her default." *McCandless*, 172 F.3d at 260 (*citing Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

The lower state courts did not address the Petitioner's remaining ineffective assistance of counsel claims. *See Wright*, 2022 WL 17039304. Petitioner argues that these other claims were raised in his pro se PCRA petition, but then omitted in the amended PCRA petition by the PCRA counsel. (Doc. 31, pp. 3–4.) A review of the pro se PRCA petition demonstrates additional issues were raised, including the alleged errors of both trial and appellant counsel. (Doc. 17-2, pp. 7–10.) However, since the claims Petitioner wishes to pursue in the instant petition were not in the amended PCRA petition, they were not considered by the PCRA court and were not appealed to the Superior Court. As such, these issues did not complete "one complete round" of the applicable state's appellate review process, and did not meet the exhaustion requirement. Therefore, the issues are procedurally defaulted.

Petitioner has not established "cause and prejudice" or a "fundamental miscarriage of justice" to excuse his default. Therefore, the court will not consider the merits of the issues raised.

**C. Petitioner's Motion for Enlargement of Time Will Be Denied.**

On February 25, 2025, the court received and docketed a document titled "Motion for Enlargement Pending Appeal." (Doc. 31.) However, the motion does

not state what was appealed or what deadline required additional time.  (*Id.*)
Regardless of the court's inability to discern the subject of Petitioner's motion,
since the court will deny the petition, any request for addition time will be denied
as moot.

### CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a
certificate of appealability ("COA"), an appeal may not be taken from a final order
in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant
has made a substantial showing of the denial of a constitutional right.  28 U.S.C. §
2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of
reason could disagree with the district court's resolution of his constitutional
claims or that jurists could conclude the issues presented are adequate to deserve
encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. at 327.  "When
the district court denies a habeas petition on procedural grounds without reaching
the prisoner's underlying constitutional claim, a COA should issue when the
prisoner shows, at least, that jurists of reason would find it debatable whether the
petition states a valid claim of the denial of a constitutional right and that jurists of
reason would find it debatable whether the district court was correct in its
procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, jurists of

reason would not find the procedural disposition of this case debatable.

Accordingly, no COA will be issued.

## CONCLUSION

For the above stated reasons, the court will deny the petition for writ of habeas corpus under Section 2254, deny the pending motion for enlargement pending appeal, deny a COA, and close the case.

An appropriate order follows.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: September 19, 2025